# EXHIBIT 1

# IN THE CIRCUIT COURT OF DAVIDSON COUNTY, TENNESSEE

## AT NASHVILLE

| | |
|---|---|
| DONOVAN COBLE <br> and <br> KAYLA COBLE, <br><br> Plaintiffs, <br><br> v. <br><br> TPS PARKING MANAGEMENT, LLC <br> d/b/a THE PARKING SPOT <br> Defendant. | DOCKET NO. _____ |

## COMPLAINT

The Plaintiffs, Donovan Coble and Kayla Coble, by and through counsel, hereby file this Complaint against the Defendant and for cause of action state as follows:

### I. PARTIES

1. The Plaintiff, Donovan Coble, is a citizen and resident of Wilson County, Tennessee residing in Mt. Juliet, Tennessee 37122.

2. The Plaintiff, Kayla Coble, is a citizen and resident of Wilson County, Tennessee residing, in Mt. Juliet, Tennessee 37122. She is and has at all times pertinent to this cause of action been legally married to Donovan Coble.

3. Upon information and belief, the Defendant, TPS Parking Management, LLC dba The Parking Spot (hereinafter "TPS"), is an active Limited Liability Company registered in Tennessee with a principal office and mailing address of 303 W. Madison Street, Suite 1500,

1

Chicago, IL 60606-3380. Its registered agent for service is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203. TPS is culpable for all negligent acts and omissions of its agents, assigns, and employees under the various doctrines on agency and respondeat superior.

## II. JURISDICTION AND VENUE

4. This is a lawsuit arising out of the tragic, near fatal shooting of Donovan Coble, the direct and proximate result of the negligent acts and omissions of Defendant through their agents and assigns. The tortious acts complained of herein culminating in the shooting occurred in Nashville, Davidson County, Tennessee, on June 1, 2023. The venue is proper in Davidson County, Tennessee, pursuant to Tenn: Code. Ann. § 20A-l01(a). Additionally, this Court has jurisdiction over the subject matter of this case and over all parties pursuant to Tenn. Code Ann. § 16-10-101, Tenn. Code Ann. § 20-2-201, Tenn. Code Ann. § 20-2-214, and other legal authorities.

## III. FACTS

5. The Defendant, TPS, owns and operates a parking lot located at 560 Donelson Pike in Nashville. TPS provides valet services and transportation services to Nashville International Airport (BNA). People flying out of BNA drive their vehicle to TPS, turn the keys over to employees of TPS who then park the vehicle in its lot. The customers then board a bus for transport to the airport.

6. The Defendant owed a duty to Plaintiff to maintain the premises in a safe condition and to exercise reasonable care in determining what security services would be appropriate for this particular location.

2

7. Because of the nature of the business, TPS owed a duty to those entering its premises to provide a safe, secure environment. This includes but is not limited to having security guards on the premises at all hours, keeping the property well-lit and also providing secure fencing. It was known or should have been known that the failure to do this would encourage criminals to seek to access the property or to attempt to break into cars valeted there. Further it was incumbent upon TPS to lock the doors of the cars entrusted to them. TPS failed in regard to all of the above.

8. In fact, it is well known to TPS that there were at least ten incidents of break-ins and thefts at TPS in close temporal proximity prior to the date of the Coble shooting. The failure to follow basic protocols recited in paragraph 7 in light of the above were intentional, willful and at the very least reckless.

9. Upon information and belief, TPS did not have adequate policies and procedures in place for the Nashville facility to keep the premises safe, secure and crime free. In the event they did, they failed to follow their own policies and procedures.

10. Upon information and belief, and as evidenced by the publicly available crime statistics, TPS is located in a dangerous, high crime area. This is a fact that was known or should have been known to Defendants. This choice of location, no doubt motivated by the desire to maximize company profits, further enhanced the obligations set forth above.

11. In the days and weeks prior to June 1, 2023, TPS had problems with the local criminal element entering into their property and trying to steal from the cars on the premises. This was because it became known to the criminal element that they could readily enter and exit the property with free egress and ingress, both through the front gate as well as through a hole in

3

the fence surrounding the property, which was in disrepair, a fact known or that should have been known by TPS.

12. It became obvious to TPS that TPS had inadequate security practices in place to keep criminals off of the lot.

13. Further, it became common knowledge to the local interlopers that TPS regularly failed to lock car doors. As a result, TPS created an attractive nuisance which the criminal element knew afforded easy access to wallets, guns, and any other desirable items left in cars.

14. On June 1, 2023, an individual named Dalama Casamir was in the midst of a crime spree. He entered into the lot at TPS, reached into an unlocked car, took the parking ticket and presented it to the counter at the TPS office. He attempted to get the keys to a Land Rover. Upon being denied he attempted to enter the vehicle. An employee of the facility, Kris VanHook confronted him and told him to stop. Casamir pulled a pistol on Mr. VanHook and left the premises.

15. At this point, TPS should have locked the gates and taken measures to enhance security. It would have been feasible to do so at little to no cost.

16. Instead, TPS simply continued with business as usual.

17. Shortly thereafter, Casamir walked into an adjacent Shell station and tried to burglarize a vehicle in the lot there. This was observed by the Shell manager Jacob Tanner.

18. Upon leaving the Shell station area, Casamir also tried to carjack a woman in the adjacent Country Inn and Suites.

19. Approximately three hours later, Casamir again entered the premises of TPS.

20. Detective Coble was dispatched to the scene.

21. When he arrived, he saw Casamir in the driver's seat of a black SUV parked at TPS. Again, this individual had ready access to the lot and ready access to the car as it was unlocked. The failure of TPS to secure the premises in light of the day's activities, and the failure to lock car doors, was reckless.

22. Casamir, as a result of the negligent and reckless failure of TPS to lock doors, took a pistol from the SUV valet parked at TPS.

23. When Casamir saw Detective Coble and the officer's partner, Casamir fled the scene on foot. He jumped a fence at the back of the TPS property to escape. Coble began foot pursuit. At a point during the chase some several hundred yards from the property of TPS, the assailant used the stolen pistol to fire at Detective Coble who was in hot pursuit and giving commands to halt and drop the weapon. Casamir shot plaintiff in the chest, causing near fatal injuries.

24. Despite being shot, Detective Coble heroically continued the pursuit. He drew his weapon and fired, ultimately killing the individual. After doing so, Coble dropped to the ground. Knowing he was badly hurt, Coble managed to arise and make it to the street, where his partner located him and drove him to Vanderbilt, where life-saving surgery was successfully performed. As a direct and proximate result of the Defendant TPS's negligent errors and omissions, Plaintiff Coble was shot. As a result of being shot, Mr. Coble was forced to endure excruciating medical procedures. He has incurred and will continue to incur substantial medical bills. He has suffered and will continue to suffer very significant physical and emotional pain and suffering. Further as a result of this incident and his concomitant injuries, he has suffered a loss of wages and loss of earning capacity. He will soon be forced to take a disability retirement from the force due to the

5

injuries complained of herein. Finally, based on the duration of his symptoms, Mr. Coble contends he has suffered a permanent impairment and disability.

25.     As a result of the injuries suffered by her husband, Kayla Coble has suffered and will continue into the future to suffer a loss of consortium, comfort, companionship and support.

### IV. ACTS OF NEGLIGENCE

26.     Plaintiff Donovan Coble hereby incorporates all previous paragraphs of the Complaint in this cause as if fully set forth herein.

### V. NEGLIGENT PREMISES SECURITY

27.     Defendant TPS owed to its customers and others foreseeably entering its premises or being proximate to TPS, such as Detective Coble, a duty of reasonable care to take such precautions as were reasonably necessary to protect these individuals from criminal attacks which were reasonably foreseeable. In light of the fact that there had been multiple crimes on the premises, as well as multiple trespassings, criminal acts including the theft of pistols from vehicles were foreseeable. This is particularly so given the high crime nature of the location on Donelson Pike.

28.     It was known or should have been known to Defendant that per Metro crime statistics, over one thousand pistols were stolen from vehicles in 2022. This information was readily available to Defendant and should have put them on even higher notice to secure the premises and lock vehicle doors. Additionally, this makes the likelihood of someone being shot with a stolen pistol very foreseeable to Defendant. Thus, the failures of the Defendant were reckless.

29. The Defendant failed to provide any security guards to serve as a disincentive to trespass.

30. The Defendant failed to take adequate measures to keep the premises secure, such as maintaining barrier fences in a good condition.

31. Not only did the Defendant fail as stated above, TPS allowed through their omissions for it TPS to become common knowledge to the nearby criminal element that TPS failed to even lock vehicle doors, thus creating an attractive environment to encourage break ins.

32. In its actions and inactions above, the Defendant breached a duty owed to Detective Coble.

33. But for the actions and omissions of TPS, both in terms of policy and failures of staff, the assailant would not have had access to the parking lot, would not have had access to the pistol and would not have created the scenario that resulted in the shooting of Plaintiff Coble.

34. The Defendant was grossly negligent in their actions, omissions and policy failures given they were so poor as to be reckless.

35. The Defendant is liable for the foreseeable intentional acts of the assailant because of their awareness of the ingress and egress on to their property of a criminal element and their failure to do anything to prevent it.

36. Having failed in this regard on an ongoing basis, it is unconscionable that TPS would fail to lock the doors of the vehicles entrusted to them.

## VI. PUNITIVE DAMAGES

37. Plaintiff Coble hereby incorporates all previous paragraphs of the Complaint in this cause as if fully set forth herein.

38. The Defendant acted recklessly when it engaged in the behaviors that caused this incident. The Defendant acted without proper regard for the safety of others and/or consciously disregarded a substantial and unjustifiable risk. The Defendant's conduct constituted a gross deviation from the standard of care that an ordinary person would exercise under the circumstances. As a result of this behavior, the foreseeable and unfortunate outcome did occur when Mr. Coble was shot. Thus, an award of punitive damages is appropriate so as to deter such future misconduct.

## VII. DAMAGES

39. Plaintiff Coble hereby incorporates all previous paragraphs of the Complaint in this cause as if fully set forth herein.

40. As a direct and proximate result of the Defendant's negligence, as set forth herein, the Plaintiff Coble received serious and painful mental and physical injuries.

41. As a direct and proximate result of the Defendant's negligence, as set forth herein, the Plaintiff, Detective Coble, is entitled to recover compensatory damages for the following:

    a. Physical and mental pain and suffering, past and future;

    b. Medical expenses, past and future;

    c. Loss of enjoyment of life, past and future;

    d. Lost wages and loss of earning capacity past and future; and

e. All other damages and general relief to which they may each one be entitled under the law and evidence.

42. As a direct and proximate result of the Defendant's outrageous conduct and willful, intentional and/or reckless disregard for the rights and physical and emotional wellbeing of Detective Coble, as set forth herein, the Plaintiff, Detective Coble received serious and painful mental and physical injuries and is entitled to punitive damages.

43. As a result of this incident, the negligence of the defendant and the resultant injuries suffered by Detective Coble, Plaintiff Kayla Coble has suffered a loss of consortium, companionship, comfort, and services due to her husband's injuries and is thus entitled to compensatory damages.

## VIII. RELIEF SOUGHT

**WHEREFORE,** the Plaintiffs sue the Defendant and pray:

1. That proper process issue and be served upon the Defendant and they be required to answer the allegations of this Complaint.

2. That Plaintiff Donovan Coble be awarded reasonable compensatory damages for bodily injuries, medical expenses, loss of wages and loss of earning capacity, pain and suffering, loss of enjoyment of life, permanent impairment and other related expenses, all past and future, in an amount not to exceed $2,500,000.00.

3. That Plaintiff Donovan Coble be awarded punitive damages in an amount not to exceed $5,000,000.00.

4. That Plaintiff Kayla Coble be awarded reasonable compensatory damages for the loss of consortium, companionship, and services of her husband in an amount not to exceed $500,000.00.

5. That a jury of six be empaneled to hear this case.

6. That the Defendant pays all court costs, including discretionary costs of this cause.

7. For such other general and further relief to which the Plaintiff may be entitled.

Respectfully Submitted,

***RAYBIN & WEISSMAN, P.C.***

/s/David J. Weissman
David J. Weissman (#025188)
David L. Raybin (#3385)
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254 – fax
dweissman@nashvilletnlaw.com
draybin@nashvilletnlaw.com
*Attorney for the Plaintiffs*